NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EMAD KARYKOUS and SAID KIRIEAKES, | : |
|  | : |
| Plaintiffs, | : |
|  | :   Civ. No. 06-2452 (AET) |
| v. | : |
|  | :   **MEMORANDUM & ORDER** |
| SBARRO, INC., | : |
|  | : |
| Defendant. | : |

THOMPSON, U.S.D.J.

I.     Introduction

This matter has come before the Court on Defendant Sbarro, Inc.'s motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary

judgment, and for a transfer of venue.  The Court has decided this motion based on the written

submissions of the parties.  Pursuant to Federal Rule of Civil Procedure 78, no oral argument was

held.  For the reasons below, the Court will grant the motion in part and deny the motion in part.

II.     Background

Plaintiffs are residents of New Jersey who formerly worked for Defendant.  Plaintiff

Emad Karykous alleges that Defendant, through its employees, subjected him to harassment

based on his Middle Eastern ethnicity, and wrongfully discharged him from his position as

Senior Vice President of International Operations.  Plaintiff Said Kirieakes alleges that

Defendant's Vice President, Genaro Sbarro, induced him to leave his job in Russia, where he

worked for one of Defendant's Russian franchisees, by offering him a profitable Sbarro franchise in New Jersey.  Plaintiff Kirieakes alleges that when he came to the United States, Defendant advised him that it could only give him a job managing a Sbarro franchise in Brooklyn, New York.  Because of the long commute from New Jersey, Plaintiff Kirieakes was unable to work at the franchise in Brooklyn, New York, and as a result, he alleges that Defendant constructively terminated him.  Plaintiff Kirieakes also alleges that Defendant, through its employees, discriminated against him based on his ethnicity.  In addition, Plaintiffs allege that Defendant slandered them by making unfounded statements that Plaintiffs stole trade secrets and were operating knock-off restaurants, and that these comments were published in multiple newspapers and website articles.

Plaintiffs filed a Complaint against Defendant on or about April 25, 2006 in the Superior Court of New Jersey, Monmouth County.  Defendant removed the action to this Court on May 31, 2006.  Plaintiffs allege eight counts against Defendant: (1) discrimination against Plaintiff Karykous in violation of New Jersey's Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-4; (2) breach of contract with Plaintiff Kirieakes; (3) tortious interference with a prospective economic gain with regard to Plaintiff Kirieakes; (4) discrimination against Plaintiff Kirieakes in violation of NJLAD; (5) discrimination against both Plaintiffs in violation of Defendant's stated corporate policies; (6) wrongful discharge of Plaintiff Karykous in violation of Defendant's employment manual; (7) hostile work environment; and (8) defamation.

III.     Motion to Dismiss, or in the Alternative, for Summary Judgment

A.     Legal Standard

The Court may grant a motion to dismiss for failure to state a claim upon which relief can

be granted under Rule 12(b)(6) if, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003) (citations omitted). The Court need not, however, credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The focus of the Court's Rule 12(b)(6) analysis "is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." Oatway, 325 F.3d at 187.

When a party styles its motion as a motion to dismiss under Rule 12(b)(6), or in the alternative, for summary judgment under Rule 56, and attaches material outside the pleadings to its motion papers, a court "has the discretion to accept the extraneous material and convert the motion into one for summary judgment." Gunson v. James, 364 F. Supp. 2d 455, 460-61 (D.N.J. 2005); see also Fed. R. Civ. P. 12(b). However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (emphasis omitted).

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.

2002).  The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case."  Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson, 477 U.S. at 252.  Only evidence that would be admissible at trial will be considered.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).

B.     Choice of Law

Because many of Defendant's arguments hinge on a choice of law analysis, and Defendant has provided affidavits regarding this issue, the Court will exercise its discretion to consider the choice of law issue under the summary judgment standard.  As a federal district court exercising diversity jurisdiction, this Court will apply the choice of law rules of New Jersey, the forum state.  Echols v. Pelullo, 377 F.3d 272, 275 (3d Cir. 2004).  New Jersey courts generally will apply "the law of the state with the greatest interest in resolving the particular issue

-4-

that is raised in the underlying litigation." Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996). New Jersey's choice of law rules are based on a "flexible governmental-interest" standard. Id. Under this standard, the court first "determine[s] whether there is an actual conflict between the laws of the states involved." Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc., 894 A.2d 1136, 1146 (N.J. Super. App. Div. 2006). If there is no conflict, the court will apply the law of the forum state. See Pfau v. Trent Aluminum Co., 263 A.2d 129, 137 (N.J. 1970). If a conflict exists, then the court "identif[ies] the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Int'l Union, 894 A.2d at 1146.

       1.    NJLAD Claims

Because Plaintiffs' NJLAD claims are based on a New Jersey statute that differs from the corresponding New York statute, there is an actual conflict of laws. See N.J. Stat. Ann. § 10:5-12; N.Y. Exec. Law § 296; see also Babcock v. Sears, Roebuck & Co., 2005 WL 3533568, at *2 (N.J. Super. App. Div. Dec. 28, 2005). Courts have previously held under New Jersey's choice of law rules that a New Jersey resident cannot assert a claim under NJLAD if he or she is employed entirely out-of-state. See Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 614 (D.N.J. 2001) (citing Bucilli v. Timby, Brown & Timby, 660 A.2d 1261, 1263 (N.J. Super. App. Div. 1995)). However, NJLAD claims can be asserted against an out-of-state defendant if there are sufficient contacts with New Jersey. See Bowers v. Nat'l Collegiate Athletic Ass'n, 151 F. Supp. 2d 526, 531 (D.N.J. 2001).

In the present case, Plaintiffs do not make any allegations as to where Plaintiff Karykous performed his employment activities. As for Plaintiff Kirieakes, Plaintiffs allege that Defendant

offered him a job in New Jersey, but ultimately gave him a job in Brooklyn, New York. Defendant has submitted an affidavit from one of its officers, Mr. William Vetter, establishing that Defendant's administrative and executive level functions have only ever operated in the State of New York, and that Defendant's only contacts with New Jersey are through its franchise stores.  (Aff. of William J. Vetter [hereinafter "Vetter Aff."].)

Mr. Vetter states that Plaintiff Karykous was the Senior Vice President of International Operations for Sbarro, and his duties and responsibilities related to "international franchise unit opening and finding desirable international locations and franchisees for Sbarro."  (Vetter Aff. ¶ 3.)  Mr. Vetter indicates that Plaintiff Karykous "traveled extensively throughout the world in this capacity [and] none of his responsibilities called for any performance of duties in New Jersey or relating to New Jersey."  (Id.)  The terms of Plaintiff Karykous's employment were negotiated in New York, and Plaintiff Karykous would travel to New York approximately once every two months to meet with Defendant's officers.

Mr. Vetter states that Plaintiff Kirieakes was not hired as a manager for a Sbarro in Brooklyn, New York, but instead was the Director of Operations for Sbarro.  Plaintiff Kirieakes's "job duties entailed the marketing and promotion of Sbarro franchises outside of the United States, as well as the supervision of the opening of new locations outside of the [United States]." (Vetter Aff. ¶ 7.)  Under the terms of his employment, Plaintiff Kirieakes was required to "report to his superiors, attend meetings and training at Sbarro's New York headquarters, and promote Sbarro's interests internationally."  (Id.)  Mr. Vetter states that Plaintiff Kirieakes traveled internationally on an extensive basis to conduct his job duties, and that none of his duties were required to be performed in New Jersey.

-6-

Plaintiffs represent in their opposition brief that Plaintiff Karykous conducted nearly all of his employment duties in Egypt and New Jersey, and that Plaintiff Kirieakes worked for Defendant's Russian franchisees in both Russia and New Jersey.  (Pls.' Br. in Opp'n at 2.)  Under the standard for summary judgment, once Defendant has pointed out that there is an absence of evidence to support that Plaintiffs were employed in New Jersey, the burden then shifts to Plaintiffs to show the existence of some evidence in their favor to establish that there is a genuine issue of material fact.  See Celotex, 477 U.S. at 322-25.   To meet their burden, Plaintiffs cannot merely rely on the unsupported allegations in their Complaint and opposition brief.  See Anderson, 477 U.S. at 252.  As a result, the Court finds that there are insufficient contacts with New Jersey for Plaintiffs to assert NJLAD claims.  Accordingly, the Court will dismiss Counts I and IV.

2. <u>Breach of Contract (Count II)</u>

Count II asserts a breach of contract claim based on Plaintiff Kirieakes's allegations that Defendant offered him a Sbarro franchise, but failed to give him the promised franchise after he left his job in Russia to come to the United States.  (Pls.' Br. in Opp'n at 4.)  Under New Jersey's choice of law rules for breach of contract claims, a court considers the following factors:  (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  See Pepe v. Rival Co., 85 F. Supp. 2d 349, 380-81 (D.N.J. 1999).  Defendant has provided evidence that the contract was negotiated in New York, and that Plaintiff Kirieakes's employment did not require him to perform duties in New Jersey.  (Vetter Aff. ¶ 7.)  Based on the underlying facts, the Court concludes that New

York law should be applied to this claim.

### 3.      Tortious Interference with a Prospective Economic Advantage (Count III)

Plaintiff Kirieakes's claim that Defendant tortiously interfered with his prospective economic advantage arises from the same set of events as his breach of contract claim.  To state a claim for tortious interference in New Jersey, a plaintiff must allege (1) his or her reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.  Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (1989) and Restatement (Second) of Torts § 766B).  To state a claim in New York, a plaintiff must allege "(1) a valid contract between plaintiff and a third party for a specific term; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of its breach; and (4) damages."  Diehl & Sons, Inc. v. Int'l Harvester Co., 445 F. Supp. 282, 291 (E.D.N.Y. 1978).  Based on the facts presented, the Court concludes that New York has a stronger interest than New Jersey in having its law apply. Defendant has provided evidence that its executive and administrative offices are located in New York, and that Plaintiff Kirieakes went to New York to enter into the employment agreement. (Vetter Aff. ¶ 2, 7.)  Therefore, the Court will apply New York law to Plaintiff Kirieakes's claim of tortious interference.

### 4.      Discrimination – Breach of Implied Contract (Count V)

In Count V, Plaintiffs allege that Defendant discriminated against both Plaintiffs in

violation of its stated corporate policies, and that this discrimination resulted in damages.  In essence, this is a claim for breach of an implied contract.  See Wanaque Borough Sewerage Auth. v. Twp. of W. Milford, 656 A.2d 448, 451 (N.J. Super. App. Div. 1995); Watts v. Columbia Artists Mgmt. Inc., 591 N.Y.S.2d 234, 236 (N.Y. App. Div. 1992).  Based on its above analysis under New Jersey's choice of law rules for breach of contract claims, the Court concludes that New York law should be applied to this claim.

     5.     Wrongful Discharge – Breach of Implied Contract  (Count VI)

In Count VI, Plaintiff Karykous alleges that he was wrongfully discharged in violation of Defendant's employment manual and Defendant's representations to him.  Both New Jersey and New York recognize a narrow claim for breach of an implied contract based on an employee handbook.  See Woolley v. Hoffmann-La Roche, Inc., 491 A.2d 1257 (N.J. 1985); Weiner v. McGraw-Hill, Inc., 443 N.E.2d 441 (N.Y. 1982).  Based on its above analysis under New Jersey's choice of law rules for breach of contract claims, the Court concludes that New York law should be applied to this claim.

     6.     Hostile Work Environment (Count VII)

In Count VII, Plaintiffs allege that Defendant created a hostile work environment and discriminated against them based on their ethnicity, and that they suffered damages as a result of Defendant's actions.  In New Jersey, such a claim would be preempted by NJLAD.  See N.J. Stat. Ann. § 10:5-12.  This Court has already determined that Plaintiffs cannot assert NJLAD claims because they have not demonstrated that their employment had sufficient contacts with New Jersey.  See Bowers, 151 F. Supp. 2d at 531.  The facts of this claim indicate that the hostile work environment was created in New York, where Defendant's executive and administrative

employees were located.  Thus, the Court will apply New York law to this claim.

### 7.   Defamation (Count VIII)

Under New Jersey choice of law rules for defamation, if a defamatory communication is published in one state, that state's law will apply.  If a defamatory communication is published in more than one state, then the law of the state with the most significant relationship will apply. Sys. Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1138 (3d Cir. 1977).  Here, the newspapers and web articles were published in various states, so the Court must determine which state has the most significant relationship to the defamation.  Plaintiff alleges that the slanderous remarks were originally made by Defendant's counsel.  Defendant's counsel represents that he made certain remarks about a pending law suit Defendant brought against Plaintiffs in New York to a New York newspaper.  (Affidavit of Stuart M. Steinberg ¶ 7.)  Based on the submissions of the parties, the Court concludes that New York has a more significant relationship to the alleged defamation than New Jersey.  Therefore, it will apply New York law to this claim.

### C.   Motion to Dismiss

Having determined which state's law to apply to each of Plaintiff's claims, the Court will now consider Defendant's arguments for dismissal under Rule 12(b)(6).  Defendant argues that Plaintiffs have failed to state a claim for breach of contract (Count II), tortious interference (Count III), breach of implied contract based on violation of a corporate policy (Count V), breach of implied contract based on a violation on Defendant's employment manual (Count VI), hostile work environment (Count VII), and slander (Count VIII).

### 1.   Breach of Contract (Count II)

Under New York law, Plaintiff Kirieakes must allege the following elements to state a claim for a breach of contract: (1) formation of a contract, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damage.  See, e.g., Furia v. Furia, 116 A.D.2d 694, 695 (N.Y. App. Div. 1986).  If an employee "is engaged to fill a particular position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement."  Rudman v. Cowles Communications, Inc., 280 N.E.2d 867, 872 (N.Y. 1972).  Accepting the allegations in the Complaint as true, the Court concludes that Plaintiff Kirieakes has sufficiently stated a claim for breach of contract.  Plaintiff Kirieakes alleges that there was an oral contract, that he performed by going to the United States, and that Defendant failed to perform because it did not give him the promised franchise, and that there were resulting damages.

### 2.    Tortious Interference (Count III)

Plaintiff Kirieakes has failed to state a claim of tortious interference under New York law. To state a claim of tortious interference in New York, Plaintiff Kirieakes must allege a contract with a third party.  See Diehl & Sons, Inc., 445 F. Supp. at 291.  However, Plaintiff Kirieakes alleged that Defendant tortiously interfered with his contract with Defendant, and not a contract with a third party.  Accordingly, the Court will dismiss Count III.

### 3.    Discrimination – Breach of Implied Contract (Count V)

Plaintiffs allege in Count V that Defendant breached an implied contract by discriminating against them in violation of stated corporate policies.  To state a claim for an implied-in-fact contract, Plaintiffs must make allegations as to the extent of the contract terms, the intent of the parties, and the surrounding circumstances.  Watts, 188 A.D.2d at 801.  Because

-11-

Plaintiffs do not make such allegations, the Court will dismiss Count V.

         4.      Wrongful Discharge – Breach of Implied Contract  (Count VI)

The New York Court of Appeals "created an exception to the general employment-at-will presumption where an employer makes an employee aware of an express written policy limiting its right to terminate the employee who detrimentally relies on that policy when accepting the employment." Lawson v. N.Y. Billiards Corp., 331 F. Supp. 2d 121, 128 (E.D.N.Y. 2004) (citing Weiner, 443 N.E.2d at 441).  To state a claim under this exception, Plaintiff Karykous must allege that he was made aware of an express written policy that limited Defendant's right to terminate him, and that he detrimentally relied on that policy.  Because Plaintiff Karykous does not make such allegations, the Court will dismiss Count VI.

         5.      Hostile Work Environment (Count VII)

For a claim of hostile work environment based on racial discrimination, a plaintiff must allege "more [than] a few isolated incidents of racial enmity." Forrest v. Jewish Guild for the Blind, 765 N.Y.S.2d 326, 335-36 (N.Y. App. Div. 2003).  Plaintiffs must allege "harassment sufficiently severe or pervasive as to alter the conditions of [their] employment and create an abusive working environment." Id.  In Count VII of their Complaint, Plaintiffs merely allege that Defendant acted in a way that created a hostile work environment because of their ethnicity.  Plaintiffs do not make any allegations that would establish "incidents of racial enmity" or severe harassment that created an abusive working environment.  As a result, Plaintiffs have failed to state a claim of hostile work environment.  Accordingly, the Court will dismiss Count VII.

         6.      Defamation (Count VIII)

Finally, Defendant contends that Plaintiffs' defamation claim (Count VIII) should be

dismissed because Plaintiff have failed to state a claim under New York law.  To state a claim of defamation, Plaintiffs must allege that (1) a false statement (2) is published without privilege or authorization to a third party (3) due to the fault of Defendant, and that (4) the statement caused special harm or constitutes defamation per se.  <u>Dillon v. City of New York</u>, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999).  A defamation action must allege the particular words complained of, and must also allege the time, place, and manner of the false statement and to whom it was made.  <u>Id.</u>  Plaintiffs have not made the necessary allegations to state a proper claim for defamation.  Therefore, the Court will dismiss Count VIII.

IV.    <u>Motion for Transfer of Venue</u>

A federal district court may use its discretion to transfer a civil action "to any other district or division where it might have been brought" based on "the convenience of parties and witnesses."  28 U.S.C. § 1404(a).  A motion for transfer of venue is "not to be liberally granted" because plaintiff's choice of forum is generally given great weight.  <u>Dinterman v. Nationwide Mut. Ins. Co.</u>, 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998).  If the motion is based on forum non conveniens, the moving party bears the burden of showing that transfer of venue is appropriate.  <u>Id.</u>  In deciding a motion to transfer venue, a court should consider (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice."  <u>Id.</u> (citations omitted).

Defendant argues that a transfer of venue would be appropriate because the events complained of occurred in New York, the proofs are in New York, Defendant's witnesses are in New York, and New York courts have an interest in applying New York law.  Defendant also points out that Plaintiffs have consented to jurisdiction for a related lawsuit pending in Suffolk

-13-

County, New York.  However, based on the "decisive weight" afforded to Plaintiffs' choice of forum when venue is challenged on the grounds of forum non coveniens, id., and the inconvenience that Plaintiffs would face as New Jersey residents pursuing an action in a New York court, the Court concludes that the balance of factors weighs in favor of retaining venue in this district.

V.      Conclusion

For the foregoing reasons, and for good cause shown,

IT IS on this 19th day of September, 2006,

ORDERED that Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment, and for a transfer of venue [6] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that Counts I, III, IV, V, VI, VII, and VIII are DISMISSED; and it is further

ORDERED that this Court shall retain venue.


                                                    s/ Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.